IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ELIZABETH CAROL ARNOLD, | ) | C/A: 4:20-03788-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

On October 28, 2020, Plaintiff Elizabeth Carol Arnold brings the within action pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of a final decision of Defendant Acting Commissioner of Social Security (the "Commissioner") denying her claim for social security disability and supplemental security income benefits.

## BACKGROUND

Plaintiff protectively filed for social security disability and supplemental security income on October 23, 2018, alleging disability commencing June 1, 2017. Plaintiff alleges disability based on arthritis in her leg, knees and back, and high blood pressure. Plaintiff's applications were denied initially and upon reconsideration. An Administrative Law Judge ("ALJ") held a hearing held on December 19, 2019. Plaintiff appeared with counsel and testified. The ALJ also heard from a vocational expert. The ALJ issued an unfavorable decision on January 28, 2020. The ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2019. The ALJ noted that Plaintiff was working part-time as an usher at a local facility, but that the work did not rise to the level of substantial gainful activity. Thus, the ALJ

found Plaintiff had not engaged in substantial gainful activity since June 1, 2017, the alleged onset date. The ALJ determined that Plaintiff has the following severe impairments: spine disorder, which significantly limits the ability to perform basic work activities. The ALJ further observed he considered Plaintiff's impairments of coronary artery disease, carpal tunnel syndrome, hypertension, and dysfunction of major joint, knee. The ALJ found these impairments do not cause Plaintiff any vocationally relevant functional limitations and are therefore nonsevere. In addition, the ALJ found no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926), specifically Listings 1.02 and 1.04.

The ALJ determined Plaintiff has the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b): She can never climb ladders/ropes/scaffolds; occasionally climb ramps/stairs, balance, stoop, crouch, kneel, or crawl; frequent use of moving machinery, or exposure to unprotected heights. The ALJ stated:

> At the hearing, the claimant testified that she is 62 years old and has a high school education. She has a driver's license, and she does drive. She is working part-time now as an usher. She has not looked for any full-time work. She is already receiving Social Security and retirement. She stated that she is unable to work because she is unable to stand for long periods. She has back problems, and she has arthritis across her back. She also gets short of breath sometimes. She is unable to do what she used to and she liked to do a lot of things. She is able to stand (without breaks) for 30 minutes, sit 30 minutes, and walk 20 minutes. The heaviest weight she can lift is not over 5 pounds. She stated that she had problems with her knees, but was treated with shots and this alleviated the pain. However, she still has problems bending. She has no problems with her hands, except for night tingling on the right side. She has no shortness of breath and uses no inhaler. At home, she cooks, takes care of her own personal care, and does laundry with the help of her daughter. She cleans very little, and she is unable to vacuum or sweep because of her back. She is able to grocery shop. She uses her cell phone, gets on Face book, and she goes to church. She stays at home most of the day, and her most comfortable position is her recliner because it helps ease her back pain. She testified that at her part-time job, she works on the

floor and seats people. She sometimes has to go up and down stairs. She stated that after 4-6 hours she [*sic*] a day to recover.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because there is nothing in the objective evidence to support a finding that the claimant would be unable to perform any work activity. The objective evidence shows records where the claimant noted that she walked with a walking group (Exhibit 13F, pg. 13). On September 27, 2018, the claimant had outpatient physical therapy for her low back pain. Physical therapy demonstrated decreased hip and core strength and decreased lumbar mobility. She had a long history of low back pain. She presented to her primary care physician and was referred to a spine specialist, where x-rays showed arthritis. Her pain was worse with lifting, vacuuming, mopping, weather, and standing for long periods. The pain was occasional and located in her lower back. She had occasional episodes of sciatica where the pain went down her left leg. She uses a heat and cold pack, and she takes Tylenol, which helps. She has no numbness or tingling (Exhibit 13F, pg. 28). Physical examination noted extension mobilization increased central low back pain. She was compliant with her exercises and progressing well with her core (Exhibit 13F).

Records from Piedmont Orthopedics dated December 11, 2018 noted that the claimant presented for follow-up. She had bilateral L3-4, L4-5, and L5-S1 facet joint injections. It was noted that her physician did not feel that the claimant would benefit from surgical intervention. The injections had helped significantly; however, she fell shortly afterwards, and had recurrence of her pain. Her pain did not wake her up. Her pain was aggravated by sitting, and was alleviated when she sat with the weight off her buttocks, or sat in a shifted position. She had not had an MRI, and did not want one. X-rays showed degenerative changes, and spondylosis with facet arthropathy, especially in the lower lumbar spine. Physical examination showed straight leg raise was negative. She had pain with lumbar flexion and lumbar extension. She was tender to palpation over the lower lumbar spine, and right lower lumbar paraspinous (Exhibit 14F).

Follow-up records dated January 3, 2019 noted that the claimant was doing well. Her blood pressure was controlled. She had no chest pain and no dyspnea on exertion. She reported that she walked five miles the night prior, and she does this regularly (Exhibit 17F).

Records from Reddy Family Medicine dated August 12, 2019 showed a physical

examination, which revealed that the claimant had no joint tenderness, deformity, or swelling in her back. She was treating with pain management, and was starting to build a case for an MRI, which she would have soon (Exhibit 35F).

As for medical opinion(s) and prior administrative medical finding(s), I cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. I have fully considered the medical opinions and prior administrative medical findings as follows:

The state agency consultants opined on January 2, 2019 and May 16, 2019 that the claimant retained the residual functional capacity to perform light work with no climbing ladders, ropes, scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She would be limited in fingering and handling and would need to avoid concentrated exposure to moving machinery and unprotected heights (Exhibits 5A, 6A, 9A, and 10A). I have considered these opinions and have found them reasonable based on the evidence available to the state agency at that time; however, the state agency did not have access to the entire record, and the state agency found impairments severe, which were not supported by the medical evidence of record, and therefore, these opinions are not persuasive.

Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by treatment notes, and x-rays, which support a finding that the claimant has the alleged impairment; however, not to the severity as to preclude all work activity. The majority of the medical evidence deals with her heart issues and breast cancer, impairments that have significantly resolved. There was not enough support in the record to find her carpal tunnel a severe impairment. In regards to her back issues, she has only been treated conservatively with medication, injections (which significantly helped), and physical therapy. Her physician did not find her to be a surgical candidate. The claimant testified that she was unable to do much; however, despite her pain, she is able to walk five miles, which she does regularly (Exhibit 17F). The record also showed that she walks with a group of friends in a walking group, which is inconsistent with her testimony of mostly lying in her recliner. She has not had an MRI, and has only had x-rays, which showed arthritis. She is able to do some things around her house, care for her own personal hygiene, go to church, shop, drive, and cook. In addition, she was working part-time as an usher at a local facility, which required her to walk and sometimes climb up and down steps. I have considered the claimant's back pain in assessing the residual functional capacity. There is nothing in the record to support any less than light work.

Therefore, after review of the entire record, and the claimant's testimony, I find that with the claimant's impairments she would still be capable of the residual functional capacity as set forth in this decision.

ECF No. 9-2, 14-16.

The ALJ recounted that the vocational expert testified Plaintiff's past work consisted of a security guard and that she would be capable of returning to her past relevant work as a security guard. The ALJ found this work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. As a consequence, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from June 1, 2017, through the date of the decision. ECF No. 9-2, 16-17.

## THE REPORT AND RECOMMENDATION

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Thomas E. Rogers for a Report and Recommendation. Plaintiff raised the following sole issue in her brief:

> If an impairment is more than slight, it must be found severe and its effects must be weighed in combination with other impairments in assessing residual functional capacity. Here the ALJ failed to properly evaluate Arnold's mental conditions without adequate explanation. Where the ALJ failed to do this, must the case be remanded for him to do so?

ECF No. 14, 20.

Plaintiff argued the Magistrate Judge erred in failing to find Plaintiff's coronary artery disease, carpal tunnel syndrome, hypertension, dysfunction of major joint, and knee problems to be nonsevere impairments and failed to consider or make any findings with respect to Arnold's obesity. ECF No. 14. The Commissioner filed her response to Plaintiff's brief on June 21, 2021 (ECF No. 16) and Plaintiff filed a reply brief on September 17, 2021 (ECF No. 17).

On April 25, 2022, the Magistrate Judge issued a Report and Recommendation in which he reviewed Plaintiff's argument that the ALJ erred in finding some impairments nonsevere, specifically Plaintiff's heart condition and shortness of breath. The Magistrate Judge observed that,

5

within this issue, Plaintiff argues the ALJ failed to address at all and find any impairment as to obesity.

Regarding Plaintiff's nonsevere impairments, the Magistrate Judge noted "'[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" ECF No. 19, 6 (quoting *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984). The Magistrate Judge noted that the ALJ had discussed the medical records regarding breast cancer and Plaintiff's controlled blood pressure, no shortness of breath upon exertion, no chest pain, and the fact Plaintiff walked five miles regularly. The Magistrate Judge determined the ALJ's discussion and analysis, as a whole, was sufficient to demonstrate he considered all Plaintiff's impairments and was sufficient for the court to properly review the ALJ's conclusion on this issue, as well as Plaintiff's residual functional capacity determination.

Regarding Plaintiff's claim the ALJ failed to make a finding on obesity, the Magistrate Judge stated Plaintiff was correct the ALJ did not discuss obesity, and that Plaintiff's own doctors never diagnosed Plaintiff with obesity or cited she had obese body limits. However, the Magistrate Judge found the medical records supported a finding Plaintiff possessed a BMI above 30.00 for at least a twelve month period. The Magistrate Judge reviewed the version of SSR 19-2p that was in effect at the time of the ALJ's decision, which has since been rescinded. SSR 19-2p provided:

> Health care practitioners diagnose obesity based on a person's medical history, physical examinations, and body mass index (BMI). For adults, BMI is a person's weight in kilograms divided by the square of his or her height in meters (kg/m[FN2]). People with obesity weigh more than what is considered the healthy weight for their height. In the medical community, obesity is defined as a BMI of 30.0 or higher. No specific weight or BMI establishes obesity as a severe impairment within the disability program.

6

> . . . .
>
> We establish obesity as an MDI by considering objective medical evidence (signs, laboratory findings, or both) from an AMS. We will not use a diagnosis or a statement of symptoms to establish the existence of an MDI. Signs and laboratory findings from an AMS that may establish an MDI of obesity include measured height and weight, measured waist size, and BMI measurements over time.
>
> We calculate BMI based on the medical evidence in the case record, even if the person's medical source(s) has not indicated that the person has obesity. We will not calculate BMI based on a person's self-reported height and weight. In addition, we will not purchase tests to measure body fat. When deciding whether a person has an MDI of obesity, we consider the person's weight over time. We consider the person to have an MDI of obesity as long as his or her weight, measured waist size, or BMI shows a consistent pattern of obesity.

ECF No. 19, 8-9 (quoting SSR 19-2p, 2019 WL 2374244, *2-3).

The Magistrate Judge agreed with Plaintiff that the ALJ erred by not discussing obesity and by not making a determination as to whether obesity was a medically determinable impairment and, if so, whether the impairment was severe or nonsevere. The Magistrate Judge found, however, the lack of discussion to be harmless because the record does not reflect any functional limitations from obesity. Specifically, the Magistrate Judge found:

> Plaintiff here met the typical BMI for medical diagnosis of obesity but no treating professional diagnosed her with obesity or marked out a plan regarding obesity, and Plaintiff remained with functional abilities, including walking five miles. (Tr. 1195)(in October 2018, Plaintiff reported ability to complete all activities without pain, had 5/5 strength, had no barriers with activities of daily living, and walks with a walking group); (Tr. 1896)(in January 2019, it is noted Plaintiff had controlled blood pressure, no chest pain, no shortness of breath upon exertion, and walked five miles the prior night and did so regularly).

ECF No. 19, 10.

Accordingly, the Magistrate Judge recommended the ALJ's decision be affirmed.

Plaintiff filed objections to the Report and Recommendation on May 9, 2022 (ECF No. 20) to which the Commissioner responded on May 3, 2022 (ECF No. 22).

This matter is now before the court for review of the Magistrate Judge's Report and Recommendation. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Opriano v. Johnson*, 687 F.2d 44, 77 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

**STANDARD OF REVIEW**

A court should review de novo only those portions of a Magistrate Judge's Report to which specific objections are filed and review those portions to which only "general and conclusory" objections have been made – for clear error. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Opriano v. Johnson*, 687 F.2d 44, 77 (4th Cir. 1982).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 4059(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that

8

substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## APPLICABLE LAW

An individual is eligible for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, if he or she is insured, has not attained retirement age, has filed an application for disability insurance benefits, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). Under Title XVI of the Act, 42 U.S.C. §§ 1381-3(f), benefits are available to an individual who is financially eligible, files an application, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The

disabling impairment must last, or be expected to last, for at least twelve consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).  Additionally, for disability insurance benefits, the claimant must prove he was disabled prior to his date last insured.  *Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) (citing 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101(a), 404.131(a)).

The Commissioner has developed the following five-step evaluation process for determining whether a claimant is disabled under the Act: (1) whether the claimant engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment; (3) whether the impairment meets or equals the severity of an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520(a)(4)(v).  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  At step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Id.*  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

## DISCUSSION

Plaintiff contends the Magistrate Judge erred in concluding "[t]he ALJ's discussion and analysis, as a whole, is sufficient to demonstrate that he considered Plaintiff's impairments (nonsevere and severe) and is sufficient for the court to properly review the ALJ's conclusion on this issue, as well as the RFC determination."  Plaintiff contends she required continued treatment

and medications, as well as a placard as a result of her heart and breast cancer surgeries. Plaintiff argues the notations in the record of stability following triple artery bypass and graft and mitral valve repair and following breast cancer requiring a double mastectomy followed by chemotherapy do not prove that she did not suffer from the alleged fatigue and shortness of breath that she reasonably claimed from her impairments. Plaintiff further states she testified her medications caused her to gain weight and made her tired; she had to stop and rest when doing "little stuff"; and being severely limited in standing, walking, and sitting. Plaintiff asserts her inability to articulate the specific root of her problem does not erase the record evidence showing conditions that produce limitations that reasonably would be impacted by excess weight. Plaintiff contends that as her weight increased from her medications, her exertional abilities decreased. Plaintiff argues the evidence ignored by the ALJ requires remand.

The court finds the Magistrate Judge did not err in finding the ALJ's decision should be affirmed. The medical records establish Plaintiff's breast cancer is in remission, she recovered well from her heart attack and bypass surgery, her heart function is maintained with medication, and her knee pain has resolved. As the Magistrate Judge noted, Plaintiff was not diagnosed with obesity by anyone who treated her, and Plaintiff was able to walk five miles regularly. She exhibits controlled blood pressure, no chest pain, and no shortness of breath upon exertion. The court agrees with the Magistrate Judge that the ALJ's decision is supported by substantial evidence, and that, to the extent he failed to consider any impairing arising from Plaintiff's claim of obesity, such error is harmless.

## CONCLUSION

After reviewing the entire record, the applicable law, the briefs of the parties, the findings and recommendations of the Magistrate Judge, and Plaintiff's objections, the court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference. For the

reasons set out here and in the Report and Recommendation, the Commissioner's final decision is **affirmed**.

    **IT IS SO ORDERED.**

/s/ Margaret B. Seymour<br>Senior United States District Judge

Columbia, South Carolina

August 31, 2022